IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PLEASANT PRAIRIE LOGISTICS, LLC,
   Plaintiff,

v.

JAMES R. MONROE, *et al.*,
   Defendants.

Civil Action No.
1:23-cv-01741-SDG

### OPINION AND ORDER

This matter is before the Court on Defendants James R. Monroe; No Boundaries Transportation, Inc.; William Sellers; and Robin Wingo's motion to dismiss Count IV of the complaint [ECF 10]. After careful consideration, the Court **GRANTS** the motion, as Plaintiff has failed to plead fraud with sufficient particularity.

**I.   Background**[1]

This case revolves around a business dispute. Defendant Monroe worked for Pleasant Prairie Logistics (PPL) beginning in 2013.[2] He served as the Vice President of Car Haul Operations, where his job was to "broker PPL's car haul transportation loads and create, induce, and generate car haul revenue from PPL's

---

[1] The following facts are treated as true for the purposes of this motion. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

[2] ECF 1, ¶ 8.

1

clients and customers, on PPL's behalf."[3] Monroe brokered car haul loads between PPL and a company owned and operated by Defendant Sellers—BST Auto Transport, Inc.[4] Defendant Wingo also worked at PPL and assisted with administrative logistics.[5] In this capacity, he had access to PPL's confidential information and trade secrets, including their pricing rates and client information.[6]

PPL alleges that, around September 2017, Monroe and Sellers established their own logistics company, No Boundaries Transportation, Inc.[7] PPL claims that Monroe was the Vice President, managing partner, and owner/operator of No Boundaries, while he was simultaneously the Vice President of Car Haul Operations for PPL.[8] According to PPL, Monroe did not disclose to PPL his involvement with No Boundaries. Nevertheless, Monroe continued to broker deals with Sellers and BST Auto, though it is not clear from the complaint whether these deals were between No Boundaries and BST Auto, or between PPL and BST Auto. Defendants also allegedly reached out to PPL customers to procure work for

---

[3]   *Id.* ¶ 9.

[4]   *Id.* ¶ 14.

[5]   *Id.* ¶ 13.

[6]   *Id.*

[7]   *Id.* ¶ 15.

[8]   *Id.* ¶ 18.

No Boundaries.[9] PPL further alleges that "Wingo participated and assisted with the improper self-dealing by sending PPL's confidential information and trade secrets to . . . Monroe, . . . Sellers and No Boundaries."[10] PPL avers that Monroe, Sellers, and Wingo misrepresented their employment duties to try to mislead PPL customers and direct them to patronize No Boundaries instead. Additionally, PPL contends that Monroe, Sellers, and Wingo misused PPL's trade secrets and confidential information to its detriment, specifically discussing rates to steer customers from PPL to No Boundaries. As a result, PPL's revenues began declining in 2017.[11]

Ultimately, in early 2023, PPL fired Monroe and brought this suit.[12] It brings five counts: tortious interference with business relations, breach of fiduciary duty against Monroe and Wingo, fraud, and punitive damages. Defendants moved to dismiss only the fraud count, arguing that PPL has failed to plead fraud with the requisite particularity.

---

[9]   *Id.* ¶ 21.

[10]  *Id.* ¶ 22.

[11]  *Id.* ¶¶ 28–32.

[12]  *Id.* ¶ 33.

**II.     Legal Standard**

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). This principle does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

In pleading a claim for fraud, the plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The Eleventh Circuit has held that, to satisfy this pleading requirement, the complaint must set forth: "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which

they misled the plaintiff, and (4) what the defendants 'obtained as a consequence of the fraud.'" *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (applying the requirements to a RICO fraud complaint). More specifically, the plaintiff must allege facts related to each defendant's participation in the fraud. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). Ultimately, a plaintiff must establish the "who, what, when, where, how, and why" of the fraud. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006).

## III.  Discussion

PPL has failed to allege fraud with the particularity required by the federal rules. The complaint is far too general with respect to the details of the alleged fraud. It contains no dates, times, or places where the alleged fraud occurred. It contains no statements and no specific parties to whom fraudulent statements were made. It also does not clearly allege exactly what omission might have been fraudulent.[13]

Such high-level, broad, and general allegations do not suffice under the heightened federal pleading standard for fraud. PPL could have but did not, for example, allege *what* trade secrets were used, *which* of its customers were contacted by Defendants, *when* these contacts were made, *what* statements constituted false

---

[13]  *Id.* ¶ 57.

5

representations, and *how* the false representations misled PPL. And these are only illustrative—but certainly not exhaustive—of the details that are missing from Plaintiff's fraud claim.

**IV.  Conclusion**

Defendants' motion to dismiss [ECF 10] is **GRANTED.** Count IV (Fraud) of the complaint is **DISMISSED without prejudice**.

**SO ORDERED** this 31st day of March, 2024.

_____
Steven D. Grimberg
United States District Judge